THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT GREEN, Also Known as RICHARD GRANT, Appellant.

Second Department, May 2, 1977

*William E. Hellerstein* and *William J. Gallagher (Marvin E. Schechter* of counsel), for appellant.

*Eugene Gold, District Attorney (Claire Friedman* of counsel), for respondent.

SHAPIRO, J. This is an appeal from a judgment of the Supreme Court, Kings County, rendered April 30, 1976, convicting defendant-appellant, after a plea of guilty, of the crime of attempted criminal possession of a weapon in the third degree, a class E felony (Penal Law, §§ 110.00, 265.02), and sentencing him to a term of imprisonment with a minimum of 1 ½ years and a maximum of 3 years.

The only issue on this appeal is whether the initial stop of the defendant constituted an illegal deprivation of his liberty requiring a suppression of the physical evidence seized from his person. We hold that it was and that, therefore, the judgment appealed from should be reversed and the indictment dismissed.

The only witness at the suppression hearing was the arresting officer, Patrolman Louis De Marco. In substance he testified that at about 3 or 3:30 P.M., on September 15, 1975, he observed two males in conversation in front of 180 Reid Avenue, Brooklyn, New York. One of the men stepped into the hallway and the other one stayed outside. The area has been classified as "drug-prone". The one who entered the hallway was a Black male wearing a dark leather jacket. When the witness approached the building, the man in the hallway ran up the staircase. The officer followed and chased him up to the roof. However, he was unable to find him.

The officer then returned to the street, got back into the police car and left. Approximately 20 minutes later, when he returned to the same location, the officer observed a Black male wearing a black leather coat involved in a conversation

with another male. The one wearing the black leather coat (the defendant) ceased the conversation and started walking down the street when De Marco approached him.

De Marco then called the man once in order to get him to stop. He yelled "Hey you". The person in question continued walking. Then De Marco called again saying: "You with the black leather jacket." He still received no response from the individual in question, who continued walking.

After the latter made a right-hand turn onto Madison Street, De Marco saw him walk up a couple of steps at 710 Madison Street. He grabbed the man's right arm and a Luger dropped from his coat. After the Luger fell to the ground, De Marco placed defendant against the wall and then placed him under arrest. A search of his person revealed another gun and two envelopes of "vegetable matter".

On cross-examination, De Marco admitted that he never ordered defendant to halt and that he asked the defendant no questions before he grabbed his arm. De Marco was never asked whether, nor did he testify that, the man he chased up the roof was the same person that he later followed and arrested.

In denying defendant's motion to suppress, the Justice presiding at the hearing concluded (1) that De Marco had reasonable suspicion to make an investigation; (2) that, as a matter of law, defendant was not deprived of his liberty when he was grabbed by the arm; (3) that the search and arrest were contemporaneous; and (4) that therefore "there was probable cause for the search preceding the arrest." We disagree.

That the defendant was "seized" within the meaning of the Fourth Amendment may not be gainsaid (see *Terry v Ohio*, 392 US 1, 16; *People v Cantor*, 36 NY2d 106). *People v De Bour* (40 NY2d 210), upon which the People rely, is distinguishable for, as Judge WACHTLER there pointed out (p 221), "the officer never touched him [the defendant] until after he saw the pistol butt protruding from the belt." In this case, as in *People v Cantor (supra*, p 114), the physical evidence should have been suppressed since it was "revealed as a direct consequence of the illegal nature of the stop." In *People v Stewart* (41 NY2d 65, 69) the Court of Appeals said: "Before a police officer 'places a hand on the person of a citizen in search of anything, he must have constitutionally adequate,

reasonable grounds for doing so' *(Sibron v New York,* 392 US 40, 64)."

In this case the police action was not justified in its inception, nor was it reasonably related in scope to the circumstances which rendered its initiation reasonable (see *People v De Bour, supra).*

When the defendant was quietly walking down the street his movements were neither furtive nor suspicious; no tell-tale bulge was seen; the police officer asked him no questions; and the situation "was not one fraught with tension or hostility" (see *People v La Pene,* 40 NY2d 210, 226).

Since the weapon and the other physical evidence thus came to light as a direct result of the unlawful nature of the police conduct, which was based upon the officer's vague hunch of wrongdoing by the defendant (see *Terry v Ohio,* 392 US 1, *supra; Wong Sun v United States,* 371 US 471, 473), and was not justified in its inception, its suppression should have been ordered and the indictment should be dismissed (cf. *People v Townes,* 41 NY2d 97).

TITONE, J. (dissenting). I believe that the arresting officer, Patrolman De Marco, after observing someone wearing a dark leather jacket converse with another in a narcotics-prone area, and engage in evasive action by fleeing up the stairs to the roof at De Marco's approach, was justified in attempting to question a similarly dressed (and, for all outward appearances, the same) person, who appeared or reappeared on the scene 20 minutes later. De Marco's articulable reason to make inquiry on this subsequent occasion was strengthened by the fact that the defendant walked away at De Marco's approach, and continued his retreat into a building at 710 Madison Street after De Marco yelled: "Hey you" and "You with the black leather jacket."

A police officer may approach a private citizen for the purpose of requesting information so long as there is some articulable reason sufficient to justify the police action taken *(People v De Bour,* 40 NY2d 210). To a large extent what is unusual enough to make an inquiry should rest in the professional experience of the police *(People v Rosemond,* 26 NY2d 101, 104). A police officer is authorized, on the basis of the common law, to stop a person on the public streets and make reasonable, nonincriminating inquiries of him *(People v Archiopoli,* 39 AD2d 748).

The encounter here occurred in an area known for its high incidence of drug activity and after defendant, at least once, and apparently twice, had conspicuously retreated in order to avoid coming face to face with the uniformed officer (see *People v De Bour, supra,* p 220). From the facts as testified to by De Marco, the only way he could have gained the undivided attention of the retreating defendant was to grab or touch him on the arm. The action taken was clearly justified and constituted a lawful detentive stop on a founded suspicion that criminal activity was afoot (see *United States v Bugarin-Casas,* 484 F2d 853, cert den 414 US 1136). Furthermore, there is no evidence that the officer made an immediate search after he stopped the defendant by touching or grabbing his arm; rather, the search was made after the Luger dropped from the defendant's coat.

DAMIANI, Acting P. J., RABIN and SUOZZI, JJ., concur with SHAPIRO, J.; TITONE, J., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Kings County, rendered April 30, 1976, reversed, on the law, defendant's motion to suppress physical evidence granted, and indictment dismissed.