■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TONY RAMOS, Appellant.—Judgment, Supreme Court, New York County (Herbert Altman, J.), rendered March 18, 1986, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree (Penal Law § 220.18) and criminal possession of a weapon in

the third degree (Penal Law § 265.02) and sentencing him to concurrent, indeterminate terms of imprisonment of from three years to life and 1 to 3 years, respectively, unanimously affirmed.

This appeal was originally held in abeyance, remanded for a hearing on the issue of the legality of the police stop, and dismissed when applicant, who had been granted a stay of execution of judgment on April 9, 1986, absconded. On February 18, 1988, appellant was returned to Supreme Court and on May 17, 1988, a suppression hearing was held, resulting in the denial of defendant's motion to suppress physical evidence.

The order of dismissal having been vacated on September 26, 1989, we now address the merits of defendant's claim that the police stop and seizure was improper, and that the fruits thereof should have been suppressed.

At approximately 8:20 P.M. on September 12, 1985, Sergeant Tak J. Hum, a member of the law enforcement division of the Triborough Bridge and Tunnel Authority, saw defendant drive a motorcycle into a toll lane over which there was a sign reading "No Motorcycles". This prompted Sergeant Hum to approach and request identification for the purpose of issuing a traffic violation summons.

Upon noticing that defendant's motorcycle, which was a 1985 Honda, bore North Carolina license plates with an expiration date of September 1983, Sergeant Hum began to suspect that either the plates or the motorcycle had been stolen. He directed defendant to pull over to the safety zone near the administration building and, upon defendant's compliance, asked for his license, registration or other identification. Defendant replied that he did not have any such documents on his person.

The sergeant then requested that defendant accompany him into the administration building in order to verify defendant's identity and to determine whether the motorcycle or plates had been stolen. In response to the sergeant's inquiry, defendant stated that a friend had let him "hold" the motorcycle, which belonged to a man named "Jose". Defendant did not know Jose's last name, address, or telephone number. Defendant was then asked to write down his own name, address and date of birth, and this data was entered into the Department of Motor Vehicles' computer. Despite the fact that defendant had told Sergeant Hum that he had a New York State driver's license which he had left at home, the computer yielded no record thereof. Further computer data indicated that there

was no record of the motorcycle having been registered in New York.

The defendant was next asked to provide the telephone number of someone who could verify his identification, and he gave a number which he claimed was his mother's. However, the person answering the telephone indicated to the officer that there was no Mr. Ramos living there and, indeed, that she did not know anyone named Tony Ramos. Two other people at the telephone number could offer no further assistance, except that one said she knew a Tony Ramos, but could not describe him.

The sergeant then requested that defendant empty his pockets and, when defendant complied, could still find no identifying documents. Finally, Sergeant Hum asked the defendant if he had any identification in his backpack, and defendant replied that he did not. At the sergeant's request, defendant emptied the backpack onto the top of a steel cabinet, revealing a manila envelope measuring approximately 8 inches by 10 inches and a flashlight. When the officer picked up the manila envelope to return it to defendant, it "folded over" his hand, and he could feel that it contained a powdery substance. Suspecting that the envelope contained drugs, the sergeant opened it and found a plastic bag containing white powder. At this point, defendant was placed under arrest and, as the officer began to search him, volunteered that he had a gun inside his left pocket. The sergeant reached into the pocket and recovered a loaded .38 caliber revolver.

Upon examination of this entire record, we conclude, as did the hearing court, that there was no impropriety in the sergeant's actions. The law is well established that a suspected violation of the Vehicle and Traffic Law authorizes an officer to stop a vehicle and request the driver's license and registration. *(Pennsylvania v Mimms,* 434 US 106, 110-111; *People v Brock,* 154 AD2d 231; *People v Ingle,* 36 NY2d 413.) It is further well settled that "various intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence" *(People v De Bour,* 40 NY2d 210, 223) since "police-citizen encounters are dynamic situations during which the degree of belief possessed at the point of inception may blossom by virtue of responses or other matters which authorize and indeed require additional action as the scenario unfolds". *(Supra,* at 225; *cf., People v Knight,* 138 AD2d 294, 297.)

In applying these principles to the case before us, we reach the inescapable conclusion that the sergeant's actions at each stage were reasonable and tailored to the events as they unfolded. Concur—Sullivan, J. P., Carro, Kassal and Wallach, JJ.