[829 NYS2d 209]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO VELEZ, Appellant.

Second Department, February 6, 2007

## APPEARANCES OF COUNSEL

*Raymond E. Kerno*, Mineola, for appellant.

*Janet DiFiore, District Attorney*, White Plains (*Jamie E. Fair, Richard Longworth Hecht* and *Anthony J. Servino* of counsel), for respondent.

## OPINION OF THE COURT

FISHER, J.

The principal issue presented on this appeal concerns the circumstances under which it is necessary and appropriate to reopen a suppression hearing after witnesses at trial contradict the very testimony that led the hearing court to deny the defendant's motion to suppress.

The defendant was indicted on various counts of burglary, criminal possession of stolen property, and petit larceny. He moved, inter alia, to suppress physical evidence recovered from him at the scene of his arrest as well as potential identification testimony. At a pretrial hearing held on the motion, the People called two witnesses, Sergeant Michael Kreso and Detective Robert Benash, both of the Yonkers Police Department.

Sergeant Kreso testified that, on November 21, 2003, at approximately 10:16 A.M., he responded to a radio transmission concerning an Hispanic male "ringing doorbells" in the area of Tibbets Road in Yonkers. At the scene, he spoke with two individuals, James Nolan and Michael McGee, who were residents of the neighborhood. McGee told Kreso that he had observed a man in the area ringing doorbells. Nolan told Sergeant Kreso that he had seen a man leaving 184 Tibbets Road and fleeing towards McLean Avenue. Both Nolan and McGee described the individual they had seen as an Hispanic male wearing a blue jacket with a yellow collar, heading toward McLean Avenue on a yellow scooter with no license plate. While

Kreso was speaking with the two men, another police officer inspected the outside of 184 Tibbets Road and observed an open window. Kreso broadcast the description he had received from the two witnesses and, at 10:36 A.M., he received a call that a "possible suspect" had been detained a few blocks away. Kreso asked Nolan and McGee to accompany him to that location to identify the individual. They agreed.

Kreso testified that they drove to the location and, when they arrived, the defendant was sitting on the sidewalk. He was wearing a blue jacket and a yellow sweatshirt. A yellow scooter was located a few feet away from him. The defendant was not in handcuffs, but there were police officers around him. Both Nolan and McGee identified him as the individual they had seen. According to Kreso, the identification was made at 10:39 or 10:40 A.M. The defendant was then placed under arrest and handcuffed.

Detective Benash testified that, at approximately 10:16 A.M. on November 21, 2003, he received a radio transmission of a "[s]uspicious person" on Tibbets Road. Further radio transmissions added that a possible suspect entered a house and left. The description given was of an Hispanic male "on a yellow motor scooter with a blue jacket with a yellow-ish gold collar," heading toward McLean Avenue. Benash also heard on the radio that "there was an open window at the location . . . [o]n Tibbets Road, where they are investigating a burglary." A few minutes later, Benash observed the defendant on a yellow motor scooter wearing a blue jacket with a yellow collar, coming toward him. Benash stopped him, identified himself as a police officer, and told him that he was investigating an incident that had happened down the street. He asked the defendant to sit down and bear with him for a few minutes. According to Benash, the defendant was cooperative and caused the detective no concern for his own safety. The defendant sat down and Benash made "small talk" with the defendant. He was not handcuffed, and nothing was taken from him. Benash then heard over the radio that Sergeant Kreso was on his way to the location with two witnesses.

When Kreso arrived at the scene, he pulled his vehicle up to within 15 or 20 feet of the defendant. One of the witnesses got out of the car, and Kreso nodded his head, signaling to Benash that the witnesses had identified the defendant. Benash asked the defendant to lie on his stomach, placed him in handcuffs, and frisked him. From a pouch near the defendant's waist, po-

lice officers recovered two boxes containing jewelry and World War II medals, as well as an envelope with currency. After he was placed under arrest and the property was recovered from him, the defendant reportedly blurted out that the money belonged to a friend and the jewelry belonged to his girlfriend. The property in fact proved to be the fruits of two burglaries, one committed that day at 184 Tibbets Road. Benash's paperwork reflected that the defendant's arrest occurred at 10:36 A.M.

Based on this evidence, the hearing court determined that "[p]robable cause to arrest the defendant arose once [Nolan and McGee] identified him." The court denied that branch of the defendant's omnibus motion which was to suppress physical evidence on the ground that the stolen property had been recovered from the defendant following, and incidental to, his lawful arrest. The court also denied that branch of the defendant's omnibus motion which was to suppress potential identification testimony, finding that the showup procedure was "not so unnecessarily suggestive so as to create a substantial likelihood of misidentification."

At the trial that followed, the People called both Nolan and McGee as witnesses. With respect to the identification, Nolan testified that when he and McGee were brought to McLean Avenue to view the defendant, the officers at the scene "had him on the ground, cuffing him, and they picked him up and patted him down, took the stuff out of his pockets." When Nolan first observed the defendant at the scene, "[h]e was face down . . . on the sidewalk." His hands were cuffed behind his back and the officers were "searching him and picking him up at the same time."

At a sidebar held immediately after this testimony, defense counsel expressed concern that Nolan's account of the showup identification was "diametrically opposed" to the sworn pretrial testimony of the two officers. The County Court, however, saw the inconsistency as merely raising an issue of credibility.

Shortly thereafter, McGee corroborated Nolan's account of events. He testified that, when he was brought to the location on McLean Avenue, the defendant "was laying on the ground," "laying down in the street" with police around him. McGee also testified, on direct examination: "I think he was being searched while we identified him. He was detained at that time." On cross-examination, McGee again stated that, when he made the identification, the defendant was "laying on his stomach" with police around him, physically holding him.

After this testimony was elicited, the defendant moved to re-open the suppression hearing pursuant to CPL 710.40 (4). The court denied the motion, determining that, because the defendant was presumed to have knowledge of the circumstances surrounding his own arrest, evidence relating to those circumstances would not constitute new and additional facts. The court determined that, in any event, the defendant should have been more diligent in discovering the trial witnesses' version of events, and should have subpoenaed them to testify to it at the hearing.

The jury thereafter convicted the defendant of two counts of burglary in the second degree and one count of criminal possession of stolen property in the third degree. On appeal, the defendant contends, inter alia, that the trial court erred in denying his motion to reopen the hearing. We agree.

CPL 710.40 (4) provides that

> "[i]f after a pre-trial determination and denial of [a suppression] motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he [or she] could not have discovered with reasonable diligence before the determination of the motion, it may permit [the defendant] to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial."

Thus, the court has the discretion to reopen a suppression hearing if the defendant proffers new facts, which could not have been discovered with reasonable diligence before the determination of the motion, and which are pertinent to the suppression issue (*see People v Fuentes*, 53 NY2d 892 [1981]). The new facts need not, on their face, establish a constitutional violation, but they must be such "that they would materially affect or have affected the earlier [constitutional] determination" (*People v Clark*, 88 NY2d 552, 555 [1996]).

In this case, the hearing court premised its denial of the defendant's motion to suppress physical evidence on the specific finding that the seizure of that evidence had followed the defendant's lawful arrest. The arrest had been lawful, the court found, because "[p]robable cause to arrest the defendant arose once the witnesses identified him." Given the issue as framed by the hearing court, the trial testimony of both Nolan and McGee was certainly pertinent to it because both witnesses testified that the police had the defendant down on the ground and were handcuffing and searching him *before* they made their identification. Thus, contrary to the finding of the County

Court, the testimony of the two witnesses went to the heart of the hearing court's finding of probable cause (*see People v Figliolo*, 207 AD2d 679, 681-682 [1994]), and therefore raised more than merely a question of credibility (*cf. People v Rosa*, 231 AD2d 534, 536 [1996]; *People v Mack*, 224 AD2d 447, 448 [1996]).

It is true that, because a defendant is presumed to know the circumstances of his or her own arrest and therefore is capable of eliciting evidence of those circumstances at a pretrial hearing, motions to reopen suppression hearings generally are denied where the new facts proffered go only to the circumstances surrounding the defendant's arrest (*see People v Meachem*, 288 AD2d 162 [2001]; *People v Morales*, 281 AD2d 182 [2001]; *People v Young*, 278 AD2d 437, 438 [2000]; *People v Hankins*, 265 AD2d 572 [1999]; *People v Adams*, 224 AD2d 433, 434 [1996], *cert denied* 526 US 1101 [1999]; *People v Simon*, 222 AD2d 1117 [1995]; *cf. People v Barrett*, 17 AD3d 688 [2005]). The defendant here certainly could be presumed to know the conduct of the police in placing him on the ground, handcuffing him, and searching him. But we cannot draw the further inference, on this record, that he knew whether that conduct had preceded or followed one officer's signal to another that an identification had actually been made (*cf. People v Mixon*, 292 AD2d 177 [2002]; *People v Jordan*, 231 AD2d 646 [1996]).

Moreover, contrary to the court's finding, there was no lack of diligence on the defendant's part in attempting to discover the version of events to which Nolan and McGee would testify at trial (*cf. People v Mitchell-Benetiz*, 168 AD2d 994 [1990]). In preparing the case, the defense sent its court-appointed investigator to interview residents of the areas of the burglaries including Nolan and McGee. The investigator could not locate Nolan, and McGee declined to speak with him.

Nor do we agree with the County Court's conclusion that the defendant could have, and should have, subpoenaed the witnesses to testify at the hearing. In order, inter alia, to prevent the unwarranted harassment of witnesses, defendants in this state do not have an absolute right to compulsory process at a suppression hearing (*see People v Chipp*, 75 NY2d 327, 337-338 [1990], *cert denied* 498 US 833 [1990]; *People v Gant*, 26 AD3d 516, 517 [2006]; *People v Cherry*, 26 AD3d 342 [2006]). To the contrary, a defendant's right to call a complainant or an identifying witness at a suppression hearing is triggered only where the hearing evidence raises substantial issues as to the constitution-

ality of the arrest, the search, or the identification procedure, where the People's evidence is notably incomplete, or where the defendant otherwise establishes a need for the witness's testimony (*see People v Scott*, 290 AD2d 522 [2002]; *see also People v Fox*, 11 AD3d 709, 709-710 [2004]; *People v Miller*, 7 AD3d 815, 815-816 [2004]; *People v Jackson*, 7 AD3d 813, 814 [2004]). Here, the evidence as given by the police witnesses at the suppression hearing, if believed, did not raise any substantial constitutional issue, and was not "notably incomplete" (*People v Scott, supra* at 522). Moreover, if the defendant did not know whether the identification by Nolan and McGee preceded or followed his arrest, he could not have established a need for the witnesses' testimony at the hearing. And, even if he had reason to believe that the testimony of the police witnesses was inaccurate in that respect, there can be no assurance, on this record, that he would have been granted the right to call Nolan and McGee as witnesses (*see e.g. People v Kidd*, 247 AD2d 269 [1998]). Thus, contrary to the finding of the County Court, the denial of the defendant's motion to reopen the hearing could not be justified by his failure to have subpoenaed Nolan and McGee to testify. Stated simply, the defendant cannot be penalized for failing to do what the law would not have allowed him to do.

We conclude, therefore, that the defendant carried his burden of proffering new facts, which could not have been discovered with reasonable diligence before the determination of his motion, and which are pertinent to the suppression issue in that they may well have affected the hearing court's ultimate determination of probable cause (*see People v Figliolo, supra* at 681-682; *People v Villanova*, 179 AD2d 381 [1992]; *compare People v DeJesus*, 222 AD2d 449, 450 [1995]). Accordingly, the matter is remitted to the County Court, Westchester County, for a de novo suppression hearing before a different judge, and a report thereafter, with respect to those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony, and the appeal is held in abeyance in the interim (*see People v Dymond*, 130 AD2d 799 [1987]; *see also People v Kuberka*, 215 AD2d 592, 593 [1995]; *People v Veal*, 158 AD2d 633 [1990]). Because the same police officers who testified at the first hearing are likely to be called as witnesses at the new hearing, and because the credibility of those officers was, and again will be, in issue, we direct that the new hearing be conducted before a different judge.

CRANE, J.P., SPOLZINO and LUNN, JJ., concur.

Ordered that the matter is remitted to the County Court, Westchester County, for a de novo suppression hearing before a different judge, and a report thereafter, on those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony, and the appeal is held in abeyance in the interim; the County Court shall file its report with all convenient speed.