People v White (2018 NY Slip Op 01492)





People v White


2018 NY Slip Op 01492


Decided on March 7, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
L. PRISCILLA HALL
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2014-11801
 (Ind. No. 3/12)

[*1]The People of the State of New York, respondent,
v
Samuel White, appellant.


Paul Skip Laisure, New York, NY (Benjamin S. Litman of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Samantha S. Alessi, and Tina Grillo of counsel; J. Raymond Mechmann III on the brief), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (John B. Latella, J.), rendered December 4, 2014, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Michael B. Aloise, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement made to law enforcement officials.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement made to law enforcement officials are granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.
The defendant was charged with criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the fourth degree following a traffic stop at which police officers recovered a loaded firearm and a taser. The arresting officers alleged that the firearm was recovered from the defendant's waistband and the taser from the defendant's pants pocket. The defendant testified at trial that both items were recovered from a bag in the vehicle, and while he admitted to knowing of the firearm, he denied knowledge of the taser. The jury acquitted the defendant of criminal possession of a weapon in the fourth degree, which related to the taser (Penal Law § 265.01[1]), and of the count of criminal possession of a weapon in the second degree which alleged that the defendant possessed a loaded firearm with the intent to use it unlawfully (Penal Law § 265.03[1][b]). The jury convicted him, however, of the count of criminal possession of a weapon in the second degree which alleged that the defendant possessed a loaded firearm outside of his home or place of business (Penal Law § 265.03[3]).
On appeal, the defendant argues that the Supreme Court erred in denying those branches of his omnibus motion which were to suppress the loaded firearm and the statement he made to a police officer at the scene. In the alternative, he contends that he was deprived of the effective assistance of counsel when his trial counsel failed to move to reopen the suppression hearing based upon certain trial testimony by the arresting officers (see CPL 710.40[4]).
Police Officer James Weibert was the only arresting officer to testify at the suppression hearing. In relevant part, he testified that on December 29, 2011, at approximately 11:10 a.m., he and three other officers pulled over a vehicle on a roadway in Queens because the vehicle was speeding. Officer Weibert also noticed that the middle tail light of the vehicle was not working. There were two occupants in the vehicle's front seat, and the defendant was seated in the rear passenger seat.
As Officer Weibert was approaching the driver's side of the vehicle, he saw the driver reaching toward the center console. When asked whether he feared at that time that violence was about to occur, Officer Weibert answered, "No."
Officer Weibert then asked the driver for his identification and the vehicle's registration and insurance information. The driver produced his identification, but could not provide any valid registration or insurance information for the vehicle. Because the driver had "reach[ed] toward his right side waistband" when Officer Weibert asked for his identification, Officer Weibert feared the driver might be concealing a weapon, and asked him, "politely," to step out of the vehicle. The officers frisked the driver's waistband area and found nothing. The officers then removed the front passenger from the vehicle and patted him down as well. Again, no weapon was found. None of the occupants of the vehicle had been placed in handcuffs at that point, and none of the officers had drawn their weapon. Officer Weibert was standing at the rear of the vehicle, along with the driver and the front passenger.
Officer Weibert then observed the defendant in the back seat "acting very nervous," "shaking his knees and legs up and down," and "leaning forward" with "his arms tucked in tight to his waistband." At that point, Sergeant Aaron Klein asked the defendant to step out of the vehicle, and the defendant complied immediately. Sergeant Klein then asked the defendant "what do you have," and the defendant replied, "I have a piece." Sergeant Klein then recovered a firearm from the defendant's waistband.
Asked on cross-examination to describe in more detail the defendant's conduct while he was seated in the vehicle, Officer Weibert stated that the defendant was leaning forward, his legs were shaking, his arms were "tucked in" or "folded," and his hands were "tucked tightly into his lap." At no time did the defendant make any furtive motion or reach for anything.
Based on the foregoing evidence, the Supreme Court denied the defendant's motion to suppress, finding that the defendant's "particularized behavior" had caused the officers to have a founded suspicion that criminality was afoot.
At the trial, Sergeant Klein testified that he observed the defendant engaging nervously in the same behavior previously described at the suppression hearing by Officer Weibert, but he added the fact that the defendant was texting on a cell phone. Officer Weibert testified at trial that the defendant had a cell phone in his hands when he observed him in the vehicle, and admitted that he had not testified to that fact in his testimony before the grand jury and at the suppression hearing. The defendant contends that his trial counsel should have moved at that point to reopen the suppression hearing, and that his failure to do so deprived the defendant of the effective assistance of counsel.
A suppression hearing may be reopened upon a showing that "additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion" (CPL 710.40[4]; see People v John, 38 AD3d 568, 569). "The new facts need not, on their face, establish a constitutional violation, but they must be such that they would materially affect or have affected the earlier [constitutional] determination'" (People v Velez, 39 AD3d 38, 42, quoting People v Clark, 88 NY2d 552, 555). Here, the defendant contends, in relevant part, that Sergeant Klein's trial testimony that the defendant was texting on his cell phone explains why he was leaning forward with his arms tucked in by his side, and that this additional contextual information would have affected the hearing court's ultimate determination.
In our view, it is at least arguable that Officer Weibert's failure to mention that the defendant was texting on his cell phone amounted to the omission of a material fact necessary to provide the hearing court with an explicit description of the defendant's movements, rather than the ambiguous and incomplete account actually given by Officer Weibert. Nevertheless, we need not decide whether this omission provided sufficient grounds to move to reopen the suppression hearing, or whether trial counsel was ineffective for failing to do so, as we agree with the defendant that the People failed to meet their burden of proof at the suppression hearing. The evidence fell short of establishing a founded suspicion of criminal activity sufficient to justify Sergeant Klein's asking the defendant, "what do you have."
As a threshold matter, and contrary to the dissent's suggestion, we take no issue with the People's decision to produce only Officer Weibert at the suppression hearing, and not Sergeant Klein (see CPL 710.60[4]; People v Edwards, 95 NY2d 486; People v Ortiz, 87 AD3d 602).
There was nothing improper about the police officers' direction that the defendant and the two other occupants exit the vehicle. "In light of the heightened dangers faced by investigating police officers during traffic stops, a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car" (People v Garcia, 20 NY3d 317, 321; see Pennsylvania v Mimms, 434 US 106; People v Robinson, 74 NY2d 773, 775). However, the scope of that authority is limited to guarding against "the unique danger of a partially concealed automobile occupant by allowing the officer to order occupants out of a car and readily observe their movements" (People v Garcia, 20 NY3d at 323). The reasonableness of police conduct beyond that limited authority must be assessed in accordance with the framework set forth in People v De Bour (40 NY2d 210) and People v Hollman (79 NY2d 181) (see People v Garcia, 20 NY3d at 322).
Under level one of the De Bour analysis, a police officer may approach a private citizen to "request information" when there is "some objective credible reason for that interference not necessarily indicative of criminality" (People v De Bour, 40 NY2d at 223). The next degree, level two, "is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a [police officer] is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (id.).
In the context of a traffic stop, the Court of Appeals has made clear that "a police officer who asks a private citizen if he or she is in possession of a weapon must have founded suspicion that criminality is afoot" (People v Garcia, 20 NY3d at 324), thereby squarely placing this type of inquiry within De Bour level two. Moreover, mere nervousness does not provide the requisite indication of criminality (see id.; People v Banks, 85 NY2d 558, 562; People v Milaski, 62 NY2d 147, 156).
Here, the circumstances described by Officer Weibert at the suppression hearing did not establish "a founded suspicion that criminality [was] afoot" (People v De Bour, 40 NY2d at 223). Significantly, there was no testimony of a bulge at the defendant's waistband (see People v Harris, 122 AD3d 942, 944; People v Stevenson, 7 AD3d 820; People v Johnson, 178 AD2d 549; People v Bush, 171 AD2d 801), or any indication that the defendant was reaching for, grabbing at, or adjusting his waistband (see People v Correa, 77 AD3d 555; People v Stevenson, 7 AD3d 820; People v Flores, 226 AD2d 181; People v Moore, 176 AD2d 297, 298). To the contrary, Officer Weibert denied that the defendant made any furtive gesture or reached for anything; he testified only that the defendant was acting nervous, shaking his knees and legs up and down, and leaning forward in his seat with his hands in his lap and his arms tightly at his side.
At no time did Officer Weibert testify at the hearing that the defendant's position was indicative of concealment. Notably, there is nothing in the minutes of the suppression hearing to suggest that the police officers were unable to guard against the unique danger of a partially concealed automobile occupant. Sergeant Klein fully and satisfactorily addressed any such concerns by asking the defendant to step out of the vehicle in order to readily observe the defendant's movements (see People v Garcia, 20 NY3d at 321). In sum, the evidence adduced at the suppression [*2]hearing depicted a situation in which the police remained in full control at all times, where the occupants of the vehicle complied with the police officers' instructions, and where there was no objective indication that the defendant was either trying to conceal a weapon or was reaching for one.
Our dissenting colleague reaches a different result, relying on a narrative that weaves together evidence from the suppression hearing along with select portions of the trial testimony, then invoking the "totality of the circumstances" to conclude that the police conduct in this case was beyond reproach. This methodology is fatally flawed, however, as " the propriety of the denial of the defendant's suppression motion must be determined based upon the evidence before the suppression court'" (People v Wellington, 84 AD3d 984, 985, quoting People v Fleming, 65 AD3d 702, 703-704; see People v Gonzalez, 55 NY2d 720, 721-722). Thus, the dissent's reliance on the trial evidence for any purpose other than determining whether the suppression hearing should have been reopened is, at best, irrelevant and, at worst, inappropriate.
Moreover, the view of our dissenting colleague that Sergeant Klein's question—"what do you have"—was merely a level one inquiry under De Bour, no more intrusive than a basic request for information, akin to asking someone for identity, address, or destination, fails to fully take into account the context in which the question was asked. Considering in particular that the driver and front passenger of the vehicle had just been patted down for weapons, Sergeant Klein's inquiry cannot reasonably be construed as anything other than a police officer asking a private citizen whether he is in possession of a weapon—an inquiry that the Court of Appeals has squarely placed within level two of the De Bour framework (id. at 324; see also People v Graves, 142 AD3d 559, 560; People v Harris, 122 AD3d 942, 944). The fact that Sergeant Klein framed his question in open-ended terms, i.e., without asking specifically for a weapon, does not alter our conclusion (see People v Carr, 103 AD3d 1194, 1195; People v Becoate, 59 AD3d 345). The touchstone of the distinction between level one and level two of the De Bour analysis is the reasonable perception of the person being questioned: "[w]here the person approached from the content of the officer's questions might reasonably believe that he or she is suspected of some wrongdoing, the officer is no longer merely asking for information" (People v Hollman, 79 NY2d at 191). Under the totality of the circumstances described at the suppression hearing, there can be no doubt that the defendant reasonably believed that he was suspected of some wrongdoing.
We note that our dissenting colleague alternatively contends that several evidentiary building blocks demonstrated a founded suspicion of criminality. However, the first such building block—Officer Weibert's early observation of the driver of the vehicle reaching toward the center console—is of little relevance in light of Officer Weibert's testimony that the driver's actions did not cause him at that time to fear that violence was about to occur.
Moreover, any subsequent fear that Officer Weibert may have had when he later observed the driver "reaching toward his right side waistband" when asked to produce his identification, was fully resolved by asking the driver to step out of the car and patting him down.
While we do not dispute our dissenting colleague's contention that the driver's inability to produce valid insurance and registration information for the vehicle may have raised suspicions as to whether the vehicle had been stolen (cf. People v Devone, 15 NY3d 106, 114; People v Ramos, 161 AD2d 198), that fact, standing alone, does not provide a sufficient basis to inquire whether a passenger in the vehicle possessed a weapon. Moreover, Officer Weibert never testified at the hearing that the driver's inability to produce insurance and registration information was what prompted Sergeant Klein to ask the defendant if he had anything on him.
The third building block relied upon by our dissenting colleague is the defendant's nervousness, which, for the reasons already discussed, and based on the evidence adduced at the suppression hearing, fell short of providing the requisite indication of criminality (see People v Garcia, 20 NY3d at 324; People v Banks, 85 NY2d at 562; People v Milaski, 62 NY2d at 156).
Accordingly, the Supreme Court should have granted those branches of the defendant's omnibus motion which were to suppress his statement to Sergeant Klein, as well as any [*3]physical evidence recovered as a result of that statement (see People v Garcia, 20 NY3d at 324; People v Banks, 85 NY2d at 562; People v Milaski, 62 NY2d at 156-157; People v Hightower, 136 AD3d 1396, 1396-1397; People v Carr, 103 AD3d at 1195; cf. People v Dealmeida, 124 AD3d 1405, 1407; People v Barreras, 253 AD2d 369, 373). Without that evidence, there could not be sufficient evidence to prove the defendant's guilt and, therefore, the indictment must be dismissed (see People v Miranda-Hernandez, 106 AD3d 838, 839).
Although, as noted previously, it is unnecessary for us to reach the defendant's alternative contention regarding the reopening of the suppression hearing, we note that the dissent's analysis of this question is incomplete in that it fails to address the defendant's central contention that the fact that he was texting at the time he was observed by Officer Weibert provides a simple explanation why he was leaning forward with his arms tucked in by his side and his hands in his lap.
CHAMBERS, J.P., HALL and BRATHWAITE NELSON, JJ., concur.
MALTESE, J., dissents, and votes to affirm the judgment, with the following memorandum:
Contrary to the view of my colleagues in the majority, I agree with the suppression court that the reasonable and minimally invasive police inquiry at the scene of this traffic stop was justified under the totality of circumstances, and those branches of the defendant's omnibus motion which were to suppress the physical evidence and his statement to law enforcement officials were properly denied.
In New York, the propriety of an encounter between a police officer and a private citizen, whether in the context of a traffic stop or a street encounter, is governed by the graduated, four-level test set forth in People v De Bour (40 NY2d 210). A "crucial factor is whether or not the police behavior can be characterized as reasonable which, in terms of accepted standards, requires a balancing of the interests involved in the police inquiry" (id. at 217; see People v Forelli, 58 AD2d 76, 82). "The Court's purpose in De Bour was to provide clear guidance for police officers seeking to act lawfully in what may be fast-moving . . . encounters and a cohesive framework for courts reviewing the propriety of police conduct in these situations" (People v Moore, 6 NY3d 496, 499; see People v Garcia, 20 NY3d 317, 323). One of the primary considerations during these encounters is the protection of the police officers (see People v Issac, 107 AD3d 1055, 1057; People v Tillery, 60 AD3d 1203, 1205).
Here, the evidence at the suppression hearing demonstrated that on December 29, 2011, Police Officer James Weibert and his fellow plain-clothes officers were on anti-crime patrol in St. Albans, Queens. From their unmarked police vehicle, they observed a Mitsubishi automobile pass by them at a high rate of speed, estimated to be approximately 45-50 miles per hour in a 30-mile-per-hour zone. The officers pursued the Mitsubishi, engaged their emergency lights and directed the driver to pull over, which he did. At the end of the pursuit, at least one of the officers observed that the center brake light on the Mitsubishi was not working. Based upon these facts, the officers had probable cause, not mere suspicion, that the Vehicle and Traffic Law had been violated. Consequently, this was a lawful police stop of an automobile (see People v Wright, 98 NY2d 657, 659; People v Robinson, 97 NY2d 341, 346, 348-359; People v Wynn, 149 AD3d 1252; cf. United States v Stewart, 551 F3d 187, 193 [2d Cir]).
Officer Weibert testified at the hearing that, as he approached the driver's side of the vehicle, he observed the driver "motioning" or "reaching" toward the center console. When Officer Weibert asked the driver for his license and the vehicle's paperwork, he observed the driver "reaching toward his right side waistband." But the driver could not produce the vehicle registration, or proof that the vehicle was insured. At trial, it was revealed that none of the occupants of the vehicle was the owner of the vehicle.
Believing that the driver may be concealing a weapon and reaching for it, Officer Weibert directed him to step out of the vehicle and patted him down for weapons as a precautionary [*4]measure to ensure the officers' safety. Another officer did the same with respect to the front-seat passenger. No weapons were found on these two men.
Officer Weibert also observed the defendant, later revealed to be Samuel White, also known as Darryl Williams, in the back seat wearing a dark colored pea coat and "acting very nervous." The defendant was "shaking his knees" and leaning over. His arms were folded and "tucked tightly into his waistband," and his hands were "tucked tightly into his lap."
Sergeant Aaron Klein, the supervisor on the scene for this anti-crime unit, was a very experienced police officer who was subsequently promoted to Lieutenant and, in the trial transcript, he was referred to as Lieutenant Klein. The evidence at the suppression hearing demonstrated that Sergeant Klein approached the stopped vehicle with the other officers. Although Sergeant Klein did not testify at the hearing, at trial he testified, consistent with Officer Weibert's observations, that the defendant appeared to be extremely nervous—the defendant's legs were shaking, he was sweating visibly on a cold winter day, and his arms were tucked close to his sides.
Officer Weibert testified at the suppression hearing that, just as the other officers had asked the driver and the front-seat passenger to exit the vehicle, Sergeant Klein also asked the defendant to exit the vehicle. The defendant complied. When Sergeant Klein had a clearer view of the defendant standing outside of the vehicle, he merely asked him, "what do you have?" In response to that open-ended question, the defendant could have responded, "I have a cell phone," since he had a cell phone, or "I have nothing." Instead, he immediately replied, "I have a piece," which is slang for a weapon. When asked where it was, the defendant indicated his left waistband under his open jacket. Sergeant Klein then recovered a loaded handgun from the defendant's left waistband, which the trial testimony revealed to be an Uzi semiautomatic 9-millimeter pistol made by Israeli Military Industries. Officer Weibert also testified at the suppression hearing that, after the defendant and the other occupants of the car were placed under arrest, he conducted a search of the defendant and found a taser, also known as a stun gun, in the defendant's right pants pocket.
At the police precinct, the defendant was read his Miranda rights and acknowledged them by initialing the Miranda form (see Miranda v Arizona, 384 US 436). He thereafter wrote and signed a statement that the driver and the front-seat passenger did not know that he possessed the gun and the taser and that he "made it known to the officers that [he] had an illegal firearm on [his] person."
My colleagues in the majority and I agree that the facts of this case demonstrate a legal vehicular stop by the police. Both the United States Supreme Court and the New York Court of Appeals, in People v Garcia, (20 NY3d 317), have recognized that "[i]n light of the heightened dangers faced by investigating police officers during traffic stops, a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car" (id. at 321). This guards against the "unique danger of a partially concealed automobile occupant by allowing the officer to order occupants out of a car and readily observe their movements," and thus places "automobile occupants in the same position as pedestrians vis-à-vis police officers" (id. at 323). Hence, Sergeant Klein did not need any suspicion to lawfully ask the defendant to step out of the vehicle.
Where we differ is our view of whether the question posed by Sergeant Klein was permissible under De Bour and People v Garcia. In Garcia, where the Court of Appeals affirmed the Appellate Division's determination that the police lacked the requisite founded suspicion when, upon stopping a vehicle for a mere defective brake light, an officer asked if any of the occupants had a weapon (see People v Garcia, 20 NY3d at 324).
The remaining question under the De Bour analysis is whether Sergeant Klein's question—"what do you have?"—was a permissible inquiry under the totality of the circumstances. My colleagues in the majority view Sergeant Klein's question as a level two inquiry under De Bour, reasoning that it is essentially the same as "ask[ing] a private citizen if he or she is in possession of a weapon" (id. at 324).
A level one inquiry permits police to request information from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality (see People v De Bour, 40 NY2d at 223). A level one "request for information involves basic, nonthreatening questions regarding, for instance, identity, address or destination" (People v Hollman, 79 NY2d 181, 185). A level two inquiry, known as the common-law right to inquire, requires a "founded suspicion that criminal activity is afoot," and permits a "somewhat greater intrusion," in that a police officer is "entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (People v De Bour, 40 NY2d at 223; see People v Moore, 6 NY3d at 498).
"The distinction between the request-for-information encounter and the more intrusive common-law inquiry is often a subtle one" (People v Adams, 194 AD2d 102, 105). I am not convinced that the question posed to the defendant—"what do you have?"—constitutes a level two inquiry under the totality of the circumstances in this case. The question is open-ended, vague, and susceptible to different interpretations. In determining whether a police-initiated encounter is a level one request for information or a level two inquiry, the brevity of the encounter and the absence of harassment or intimidation is relevant (see People v Hollman, 79 NY2d at 190).
This police-initiated encounter was brief and, on this record, had no indicia of force or intimidation. My colleagues in the majority take issue with Sergeant Klein's one simple question that was not invasive, threatening, or offensive (cf. People v Hightower, 136 AD3d 1396, 1396-1397; People v Lowe, 79 AD3d 1676). For that reason, I am not convinced that this was more than a level one inquiry, requiring only an objective, credible reason, not necessarily indicative of criminality (see People v De Bour, 40 NY2d at 223). Further, asking that simple question was less invasive than an outer body pat down, which inevitably would have revealed the Uzi pistol in the defendant's waistband.
But here, the police also had a founded suspicion that criminality may be afoot. Assuming that Sergeant Klein's inquiry rose to level two under De Bour, the totality of the circumstances provided sufficient building blocks for the suppression court's conclusion that the police had the requisite founded suspicion of criminal activity afoot.
First, Officer Weibert described circumstances giving rise to suspicion with respect to the driver of the vehicle. As Officer Weibert approached the driver's side of the vehicle, he observed the driver "motioning" or "reaching" toward the center console, which is equivalent to a furtive motion (cf. People v Graves, 142 AD3d 559, 560). At the window, Officer Weibert observed the driver "reaching toward his right side waistband," an area that has been recognized as a location where people usually secrete firearms (see e.g. People v Benjamin, 51 NY2d 267, 271; People v Harris, 122 AD3d 942, 945; People v Davenport, 92 AD3d 689, 691). Believing that the driver could be concealing a weapon, Officer Weibert directed him to step out of the vehicle and patted him down.
Second, unlike the defendant driver in Garcia, the driver in this case failed to produce a registration for the vehicle, and proof of insurance (cf. People v Garcia, 20 NY3d at 320). Objectively, these additional violations of the Vehicle and Traffic Law (VTL § 401[4] and VTL § 319[3]) would provide a police officer with reasonable suspicion that the vehicle may have been stolen and that criminality may be afoot (see People v Devone, 15 NY3d 106, 114; People v Milaski, 62 NY2d 147, 152; People v Young, 207 AD2d 465, 466).
Third, the suppression testimony demonstrated that the defendant himself was "acting very nervous." He was "shaking his knees" and leaning over with his arms folded and "tucked tightly into his waistband" (cf. People v Harris, 122 AD3d at 945). By way of contrast, the defendant driver in Garcia did not make any movement directing attention to his waistband (see People v Garcia, 20 NY3d at 320). Once the defendant exited the vehicle, Sergeant Klein had a better view of him and his actions. That is when Sergeant Klein, while looking at the defendant, asked him, "what do you have [there]?" These building blocks were sufficient to demonstrate that the police had the requisite founded suspicion of criminality for a level-two inquiry (cf. People v [*5]Loretta, 107 AD3d 541, 542).
My colleagues in the majority point out that, when asked pointedly whether there was any indicia of criminality aside from the rate of speed and a broken tail light, Officer Weibert said "no." Based on that, the majority concludes that Officer Weibert readily admitted that no indicia of criminality was present. However, this question about any further indicia of criminality related only to observations made by the police officers before the vehicle was stopped. Officer Weibert candidly admitted that, prior to stopping the car, there was no indicia of criminality, only probable cause to believe that the driver committed two violations of the Vehicle and Traffic Law. This does nothing to negate the observations made by the police officers after the stop, including suspicious behavior by the driver and the defendant, combined with the fact that no one in the vehicle could produce its registration or insurance identification card, which could indicate that the car was stolen.
Additional Considerations
The majority takes issue with the suppression hearing testimony of Officer Weibert, who had been working on this anti-crime detail for only one week, and who was assigned as the arresting officer by his supervisor, Sergeant Klein. Officer Weibert was the only police witness presented at the suppression hearing. He relayed Sergeant Klein's inquiry of the defendant and the events leading up to it. To the extent that the majority suggests that the hearing court should have suppressed the two weapons because Sergeant Klein, who asked a supposed offensive question—"What do you have?"—did not appear at the suppression hearing. However, all of the officers involved in an arrest need not be present at every pretrial hearing (cf. United States v Brooks, 2017 WL 370810, *1, 2017 US Dist LEXIS 11077, *1-3 [WD NY No. 16-CR-6028L]; People v Ketcham, 93 NY2d 416, 421; People v Ramirez-Portoreal, 88 NY2d 99, 107-108, 113-114). As the newest member of the anti-crime unit, Officer Weibert was assigned by Sergeant Klein to make the arrest, ostensibly so that Officer Weibert could gain experience with respect to processing gun-related arrests.
It should be noted that, unlike the instant case, in Garcia the defendant pleaded guilty to two counts of possession of an air pistol or air rifle in violation of the Administrative Code of the City of New York § 10-131(b) (see People v Garcia, 20 NY3d at 321), which is not even a crime outside the City of New York (but cf. Penal Law § 265.05 ["It shall be unlawful for any person under the age of sixteen to possess any air-gun"]).
Additionally, I find it significant that no manifestation of force was exercised by any of the officers during this traffic stop and subsequent inquiry. None of them drew a weapon. All of them had their weapons in their holsters, even when the defendant indicated that he had a weapon.
Conclusion
The purpose of the constitutional protection against unlawful searches and seizures is to safeguard the privacy and security of every person against arbitrary intrusions by government, and a party aggrieved by such an intrusion may find recourse in the exclusionary rule (see generally People v De Bour, 40 NY2d at 217). The basic purpose of the exclusionary rule is to "police the police," by preventing them from acting with undue and excessive force toward the people they encounter. Here, the noninvasive, nonthreatening question posed by an experienced anti-crime sergeant is no reason to suppress the weapons found on the defendant. Considering the totality of the circumstances surrounding this traffic stop, the suppression court properly concluded that the officers developed a founded suspicion that criminal activity was afoot and the police conduct was consistent with the holding in De Bour.
The defendant's alternative contention, that he was denied the effective assistance of counsel because his trial counsel failed to move to reopen the suppression hearing after the officers' trial testimony, is without merit. If counsel had moved to reopen the suppression hearing, Sergeant Klein's strong testimony about the reasons for his founded suspicion that the defendant "might have been hiding or concealing something on him that could have injured [Sergeant Klein] or one of the [*6]other officers" would have provided the suppression court with an even stronger basis to deny those branches of the omnibus motion, which were to suppress the gun and the taser.
For the foregoing reasons, I disagree with my colleagues in the majority, and would affirm the judgment of conviction.
ENTER:
Aprilanne Agostino
Clerk of the Court