[983 NE2d 259, 959 NYS2d 464]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MIGUEL GARCIA, Respondent.

Argued October 18, 2012; decided December 18, 2012

**POINTS OF COUNSEL**

*Robert T. Johnson, District Attorney,* Bronx (*Stanley R. Kaplan* and *Joseph N. Ferdenzi* of counsel), for appellant. I. The Appellate Division erred as a matter of law in failing to rule that a police officer may, in the course of a valid traffic stop, ask if anyone in the vehicle has a weapon since such inquiry serves a legitimate protective purpose and is no more intrusive than ordering the occupants out of the vehicle regardless of any

suspicion of criminality. (*People v Alvarez*, 308 AD2d 184; *Pennsylvania v Mimms*, 434 US 106; *United States v Robinson*, 414 US 218; *Maryland v Wilson*, 519 US 408; *People v McLaurin*, 70 NY2d 779; *People v Banks*, 85 NY2d 558; *United States v Sharpe*, 470 US 675; *Florida v Royer*, 460 US 491; *People v Belton*, 55 NY2d 49; *People v Langen*, 60 NY2d 170.) II. In the event that this Court determines that the question posed by the officer was improper, it should remand the case to the hearing court to rule on the People's claim that the gun and rifle would have been inevitably discovered. (*People v Fitzpatrick*, 32 NY2d 499; *People v Stith*, 69 NY2d 313; *People v Turriago*, 90 NY2d 77; *People v Robinson*, 97 NY2d 341; *People v LaFontaine*, 92 NY2d 470.)

*Kramer Levin Naftalis & Frankel, LLP*, New York City (*Matan A. Koch* of counsel), and *Steven Banks, Legal Aid Society* (*Andrew C. Fine* and *Denise Fabiano* of counsel), for respondent. I. The Appellate Division's unanimous reversal of Mr. Garcia's conviction was based upon its review of both the law and decisive facts and is beyond the jurisdiction of this Court to review. (*People v Holland*, 18 NY3d 840; *People v McIntosh*, 96 NY2d 521; *People v Silvestry*, 11 NY3d 902; *People v Pines*, 99 NY2d 525; *People v Harrison*, 57 NY2d 470; *People v Allen*, 9 NY3d 1013; *People v Hollman*, 79 NY2d 181.) II. The Appellate Division appropriately applied the well-established four-part framework announced by this Court in *People v De Bour* (40 NY2d 210 [1976]) and *People v Hollman* (79 NY2d 181 [1992]) in suppressing the evidence obtained from the unfounded common-law inquiry of Mr. Garcia. (*People v Marsh*, 20 NY2d 98; *Pennsylvania v Mimms*, 434 US 106; *People v Robinson*, 74 NY2d 773; *People v Baumann & Sons Buses, Inc.*, 6 NY3d 404; *People v Dercole*, 52 NY2d 956; *People v McAlpin*, 17 NY3d 936; *Matter of Patchogue-Medford Congress of Teachers v Board of Educ. of Patchogue-Medford Union Free School Dist.*, 70 NY2d 57; *People v Battaglia*, 86 NY2d 755; *People v Faines*, 297 AD2d 590; *People v Jackson*, 251 AD2d 349.)

## OPINION OF THE COURT

CIPARICK, J.

On this appeal, we must determine whether a police officer may, without founded suspicion for the inquiry, ask the occupants of a lawfully stopped vehicle if they possess any weapons. We answer in the negative and, in so holding, necessarily conclude that the graduated framework set forth in *People*

*v De Bour* (40 NY2d 210 [1976]) and *People v Hollman* (79 NY2d 181 [1992]) for evaluating the constitutionality of police-initiated encounters with private citizens applies with equal force to traffic stops.

## I.

On September 19, 2007, shortly after 10:00 p.m., Police Officers Cleri, Manning and Payton, on patrol in a marked police vehicle, pulled over defendant's vehicle because of a defective rear brake light. In addition to defendant, who was behind the wheel, there were four male occupants in the vehicle. According to Officer Manning, the three passengers in the rear seat "were a little[ ] furtive," kept "looking behind," and "stiffened up" when he and Officer Cleri approached the vehicle. Officer Cleri also observed that the passengers "made furtive movements, [and] act[ed] nervous." Officer Cleri asked defendant for his license and registration. Defendant complied with the request. Officer Cleri then asked if anyone in the vehicle had a weapon, and the passenger in the rear middle seat answered, "Yes, I . . . have a knife." The officer directed the passenger to place the knife on the floor and to keep his hands in view. The passenger complied. The officers then ordered the occupants out of the vehicle and frisked each man as he exited the car. After the last passenger exited, Officer Manning saw what appeared to be "a gun or some sort of weapon" wedged between the front passenger seat and the door of the vehicle. With the aid of a flashlight, the officer retrieved and inspected the item, an air pistol.

All five occupants were handcuffed and taken to the police precinct. During a subsequent inventory search of the vehicle, Officer Cleri discovered a second air rifle located in the trunk. Defendant waived his *Miranda* rights and, after a 15 to 20 minute police interrogation, admitted that he was the owner of the air guns. An ensuing misdemeanor information charged defendant with two counts of misdemeanor possession of an air pistol or rifle (Administrative Code of City of NY § 10-131 [b]).

Defendant moved, as relevant to this appeal, to suppress the air rifles recovered from his vehicle, arguing that the officers had no basis for searching the car after it was stopped. Supreme Court granted defendant's motion, holding that Officer Cleri's question as to whether the occupants possessed any weapons required founded suspicion of criminality and that mere nervousness on the part of the occupants did not give rise to

such suspicion. Supreme Court further determined that the People failed to demonstrate a very high probability that the officers would have inevitably discovered the air guns.

The People moved to reargue that portion of Supreme Court's order that suppressed the physical evidence. Relying on *People v Alvarez* (308 AD2d 184 [1st Dept 2003], *lv denied* 3 NY3d 657 [2004]), the People argued that "an inquiry into weapon possession is not a greater intrusion than the right to remove the occupants from the car" and, therefore, does not require suspicion of criminality. Finding *Alvarez* persuasive, Supreme Court reversed its prior order and held that Officer Cleri's inquiry into the presence of weapons was permissible even though the officer lacked a founded suspicion of criminality. The court did not reach the People's alternative argument that the evidence was admissible under the inevitable discovery doctrine. Defendant pleaded guilty to two counts of the reduced charge of attempted unlawful possession of an air pistol or air rifle (Administrative Code of City of NY § 10-131 [b] [1]) and was sentenced to a conditional discharge. The Appellate Division reversed and vacated the judgment convicting defendant, granted defendant's suppression motion and dismissed the information (*People v Garcia*, 85 AD3d 28 [1st Dept 2011]). The court held that Supreme Court erred in relying on *Alvarez* upon reargument, as that case was distinguishable, and that the trial court's initial determination that the officer's inquiry required founded suspicion was correct (*see id.* at 33-34).

A Judge of this Court granted the People's application for leave to appeal (18 NY3d 883 [2012]) and we now modify.

## II.

In light of the heightened dangers faced by investigating police officers during traffic stops, a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car (*see People v Robinson*, 74 NY2d 773, 775 [1989], citing *Michigan v Long*, 463 US 1032, 1047-1048 [1983]; *Pennsylvania v Mimms*, 434 US 106 [1977]). While "[a] citizen does not surrender all the protections of the Fourth Amendment by entering an automobile" (*New York v Class*, 475 US 106, 112 [1986]), the United States Supreme Court declared in *Mimms* that the intrusion occasioned by requiring an occupant to "expose to view very little more of his person than is already exposed" is

"de minimis" and "cannot prevail when balanced against legitimate concerns for the officer's safety" (434 US at 111 [emphasis omitted]). Accordingly, we held in *Robinson* that "[b]rief and uniform precautionary procedures of this kind are not per se unreasonable and unconstitutional" under federal law (74 NY2d at 775).

The rule of *Mimms* and *Robinson* stands independently of that articulated in *De Bour* and *Hollman* and generally used to assess the reasonableness of police conduct toward private citizens in New York State. The *De Bour/Hollman* framework sets out four levels of police-citizen encounters and the attendant, escalating measures of suspicion necessary to justify each. At the initial level, a "request for information," a police officer may approach an individual "when there is some objective credible reason for that interference not necessarily indicative of criminality" (*De Bour*, 40 NY2d at 223; *see Hollman*, 79 NY2d at 185). The request may "involve[ ] basic, nonthreatening questions regarding, for instance, identity, address or destination" (*Hollman*, 79 NY2d at 185). However, "[o]nce the officer asks more pointed questions that would lead the person approached reasonably to believe that he or she is suspected of some wrongdoing . . . the officer is no longer merely seeking information" (*id.*). This "common-law right of inquiry, a wholly separate level of contact, is 'activated by a founded suspicion that criminal activity is afoot' " (*id.* at 184, quoting *De Bour*, 40 NY2d at 223). Although we have not yet addressed this issue, other appellate courts have characterized a police officer's question as to whether an individual has a weapon as a common-law inquiry requiring founded suspicion of criminality (*see People v Ward*, 22 AD3d 368, 368 [1st Dept 2005]; *People v Stevenson*, 7 AD3d 820, 821 [2d Dept 2004]; *People v Park*, 294 AD2d 887, 888 [4th Dept 2002]).

Whether the "founded suspicion" requirement of *De Bour* and *Hollman* applies to a police officer's ability to ask the occupants of a lawfully stopped vehicle if they are in possession of a weapon is debated on this appeal. Relying on the police safety justification discussed in *Mimms* and *Robinson*, the People ask us to adopt the rule that police officers may routinely pose that question regardless of any suspicion of criminality because the inquiry serves a legitimate protective purpose and is no more intrusive on the occupants' privacy than an order to step out of the vehicle. While the People acknowledge that we have applied the *De Bour/Hollman* framework in the context of traffic stops (*see People v Battaglia*, 86 NY2d 755 [1995]), they argue that it

is best suited for, and should generally be limited to, street encounters. Defendant, conversely, points out that in addition to this Court, all four departments of the Appellate Division have applied the *De Bour/Hollman* rules to traffic stops and argues that carving out the exception the People seek would be inconsistent with our search and seizure jurisprudence and would subject citizens to accusatory inquiry without even a minimal factual basis.

■ We have long placed paramount importance on promoting " 'predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens' " (*see People v P.J. Video*, 68 NY2d 296, 304 [1986], quoting *People v Johnson*, 66 NY2d 398, 407 [1985]). We have also "sought to provide and maintain 'bright line' rules to guide the decisions of law enforcement and judicial personnel who must understand and implement our decisions in their day-to-day operations in the field" (*P.J. Video*, 68 NY2d at 305). Contrary to the dissent, we believe these interests are better served by the evenhanded application of the *De Bour/Hollman* framework to street encounters and traffic stops alike. As noted, this Court and the courts of the Appellate Division have consistently applied *De Bour* and *Hollman* to traffic stops, demonstrating that the guidelines prove equally viable in that context (*see Battaglia*, 86 NY2d at 756; *People v Faines*, 297 AD2d 590, 593 [1st Dept 2002]; *People v Jackson*, 251 AD2d 349, 349 [2d Dept 1998]; *People v Tejada*, 270 AD2d 655, 656 [3d Dept 2000]; *People v McCarley*, 55 AD3d 1396, 1396-1397 [4th Dept 2008]). Moreover, the rule of *Mimms* and *Robinson* already guards against the unique danger of a partially concealed automobile occupant by allowing the officer to order occupants out of a car and readily observe their movements. Indeed, *Mimms* and *Robinson* place automobile occupants in the same position as pedestrians vis-à-vis police officers; the People's proposed rule, on the other hand, would create disparate degrees of constitutional protections based on an individual's mode of transport. Finally, by sanctioning, in the interest of safety, a suspicionless inquiry into whether the occupants of a stopped vehicle have a weapon, we may open the door to less precise inquiries with potential to raise significant privacy concerns.* We decline to

---

* For example, it would not be entirely unreasonable for an officer to believe it to be within the bounds of the People's proposed rule to ask "Is there anything in the car I should know about?" The question may be posed in

introduce uncertainty into this area of the law when it is not necessary to do so. Whether the individual questioned is a pedestrian or an occupant of a vehicle, a police officer who asks a private citizen if he or she is in possession of a weapon must have founded suspicion that criminality is afoot.

■ Having concluded that the standards of *De Bour* and *Hollman* govern police-citizen encounters during lawful traffic stops, we turn to the question of whether the Appellate Division erred in holding that there was no founded suspicion to justify Officer Cleri's inquiry. Our review of that mixed question of law and fact is limited to whether record evidence supports the Appellate Division's determination (*see People v Evans*, 83 NY2d 934, 935 [1994]). As the evidence demonstrated only that the occupants of the vehicle appeared nervous, the court's determination has record support (*see People v Milaski*, 62 NY2d 147, 156 [1984] [concluding that nervousness is not an indication of criminality]; *People v Banks*, 85 NY2d 558, 562 [1995]). Accordingly, we agree with that portion of the Appellate Division order that suppressed the air guns.

■ The People, however, further argue that in the event we determine that the officer's question was improper we should remit the case to Supreme Court for consideration of the People's alternative claim, asserted upon reargument, that officers would have inevitably discovered the disputed physical evidence. Because Supreme Court ruled in the People's favor without reaching the People's inevitable discovery argument, the People are entitled to a determination on that issue by Supreme Court, based on the evidence adduced at defendant's suppression hearing.

Accordingly, the order of the Appellate Division should be modified by remitting the matter to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

SMITH, J. (dissenting). I believe that New York is the only state in the union that forbids police officers to talk to people they meet in the street unless certain preconditions are met, and requires the suppression of evidence derived from a forbidden conversation. Today, the majority needlessly expands the already hyper-stringent rule of *People v De Bour* (40 NY2d 210

---

reference only to weapons but could just as easily encompass drugs, other contraband or any number of items a vehicular occupant may wish not to reveal.

[1976]) and *People v Hollman* (79 NY2d 181 [1992]) by limiting a police officer's ability to address a question to the occupants of a lawfully stopped automobile.

The United States Supreme Court has held that the Fourth Amendment is not violated "simply because a police officer approaches an individual and asks a few questions" (*Florida v Bostick*, 501 US 429, 434 [1991]). But we adopted a different rule in *De Bour*, and reaffirmed it in *Hollman*, "as a matter of State common law" (*Hollman*, 79 NY2d at 195-196). Under *De Bour* and *Hollman*, a police officer who approaches a citizen to request information must have "some objective credible reason" for doing so (*De Bour*, 40 NY2d at 223), while the more intrusive "common-law inquiry"—questioning which would lead the person approached "reasonably to believe that he or she is suspected of some wrongdoing" (*Hollman*, 79 NY2d at 185)—is permissible only where the officer has "a founded suspicion that criminal activity is afoot" (*De Bour*, 40 NY2d at 223). New York's "unique" approach has been criticized by the leading treatise on searches and seizures as likely to result in "such confusion and uncertainty that neither police nor courts can ascertain with any degree of confidence precisely what it takes" to comply with its requirements (4 LaFave, Search and Seizure § 9.4 [e] at 466, 468-469 [4th ed 2004]). No other state, so far as I know, has adopted a similar rule, though cases in a few states hold that intrusive or pointed questioning may constitute a "seizure" triggering constitutional protections (*State v Quino*, 74 Haw 161, 840 P2d 358 [1992]; *State ex rel. J.G.*, 320 NJ Super 21, 726 A2d 948 [1999]; *State v Pitts*, 186 Vt 71, 76-84, 978 A2d 14, 18-24 [2009]).

The *De Bour* rule has existed for 36 years, and respect for stare decisis might well deter us from abandoning it. No similar reason, however, compels us to extend it to traffic stops. This appears to be the first case in which we have ever relied on *De Bour* to suppress evidence obtained from the questioning of occupants in a lawfully stopped car. In *People v Battaglia* (86 NY2d 755 [1995]), on which the majority relies (majority op at 322-323), we denied suppression in a five-sentence memorandum that assumes the applicability of *De Bour*, but does not discuss the question.

Traffic stops are distinguishable from the street encounters between police officers and citizens to which *De Bour* and the cases following it have long been applied. Most obviously, the occupant of a stopped car has already been stopped: In *De Bour*

terms, he or she has already been subjected to a level three temporary detention (*see* 40 NY2d at 223), and it seems paradoxical to suppress evidence because of the lesser intrusion created by a level one or level two inquiry. And, as the Appellate Division pointed out in *People v Alvarez* (308 AD2d 184, 187 [1st Dept 2003]), a police officer who stops a car is permitted to order all the occupants to get out (*Pennsylvania v Mimms*, 434 US 106 [1977]; *People v Robinson*, 74 NY2d 773 [1989], *cert denied* 493 US 966 [1989]). Why can he not subject them to the much lesser inconvenience of being asked some questions, which they are not legally obliged to answer?

The *De Bour* rule is an attempt to prevent police officers from taking unfair advantage of the deference that civilians ordinarily give to agents of law enforcement—"the tendency to submit to the badge" (*De Bour*, 40 NY2d at 219). I grant that this tendency exists, and indeed that there is something inherently coercive in many, probably most, forms of police inquiry. But it is utopian to believe that we can create a society in which no such coercion exists, or in which it is never exploited by police officers investigating crimes, or that, in such a society, reasonably efficient law enforcement would be possible. As a general rule, police officers who are not using or threatening force against citizens should be allowed to do their jobs without interference from the courts. The case of an officer who, having already lawfully stopped a vehicle, asks its occupants a question does not justify an exception to this general rule.

Chief Judge Lippman and Judges Graffeo, Read and Pigott concur with Judge Ciparick; Judge Smith dissents in an opinion.

Order modified by remitting to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.