THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKY D. GATES, Appellant. [59 NYS3d 636]—

Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered August 6, 2015. The judgment convicted defendant, upon his plea of guilty, of possessing or transporting 30,000 or more unstamped cigarettes.

It is hereby ordered that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress physical evidence and statements is granted, the indictment is dismissed, and the matter is remitted to Jefferson County Court for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of possessing or transporting 30,000 or more unstamped cigarettes (Tax Law § 1814 [c] [2]). When a State Trooper pulled over defendant for speeding on Interstate 81, he noticed "several large nylon bags" with "square edged contours" filling the area behind the driver's seat. The Trooper initially asked defendant what was inside the bags, i.e., whether there was luggage in the bags, and defendant gave a series of increasingly implausible answers, including "clothing," "presents," "riding toys," and "bicycles." Defendant asked if he could leave, but the Trooper instead requested that he exit the vehicle while the Trooper spoke to two passengers. When the Trooper returned to speak to defendant, but before he advised defendant of his *Miranda* rights, defendant admitted that the bags contained nearly 300 cartons of untaxed cigarettes purchased from an Indian reservation.

Defendant contends that County Court erred in refusing to grant that part of his omnibus motion seeking to suppress physical evidence seized from his vehicle and the statements he made to the police. Initially, we note that, contrary to the People's contention, defendant's challenge to the suppression

ruling was adequately preserved. Although the court did not issue a written decision addressing the suppression issues raised by defendant, the record establishes that the court implicitly but conclusively denied that part of defendant's omnibus motion seeking to suppress physical evidence and statements that he made to the police. Defendant is not precluded from challenging the court's suppression ruling simply because he did not request that it be memorialized in writing (*see People v Elmer*, 19 NY3d 501, 509 [2012]; *People v Allman*, 133 AD2d 638, 639 [1987]).

We conclude that the court erred in refusing to suppress the physical evidence and statements at issue. Contrary to defendant's contention, however, our rationale is not grounded in custody and/or *Miranda* issues. "In light of the heightened dangers faced by investigating police officers during traffic stops, a police officer may, as a precautionary measure and without particularized suspicion, direct the occupants of a lawfully stopped vehicle to step out of the car" (*People v Garcia*, 20 NY3d 317, 321 [2012]). Here, defendant was not in custody during his temporary roadside detention, and it was permissible for the Trooper to engage in a reasonable interrogation of defendant without first advising him of his *Miranda* rights (*see People v Brown*, 107 AD3d 1305, 1305-1306 [2013], *lv dismissed* 23 NY3d 1018 [2014]).

We conclude, however, that the Trooper's initial inquiry concerning the contents of the bags constituted a level two common-law inquiry, which required a founded suspicion of criminality that was not present at the time (*see People v Hightower*, 136 AD3d 1396, 1396-1397 [2016]; *People v Carr*, 103 AD3d 1194, 1195 [2013]; *see generally People v De Bour*, 40 NY2d 210, 223 [1976]). Indeed, we note that nervousness, fidgeting, and illogical or contradictory responses to level one inquiries do not permit an officer to escalate an encounter to a level two *De Bour* confrontation (*see Garcia*, 20 NY3d at 320-322; *People v Dealmeida*, 124 AD3d 1405, 1407 [2015]). Here, the facts are even more strongly in favor of defendant inasmuch as defendant's evasive and inconsistent answers were themselves induced by a level two inquiry from the Trooper. Because a founded suspicion of criminality did not arise until after the Trooper asked defendant what was inside the bags, the court erred in refusing to suppress the evidence.

As a result, defendant's guilty plea must be vacated and, because our determination herein results in the suppression of all evidence in support of the crimes charged, the indictment must be dismissed (*see Hightower*, 136 AD3d at 1397). In light

of our determination, we do not address defendant's remaining contentions.

All concur except Winslow and Scudder, JJ., who dissent and vote to affirm in the following memorandum.

Winslow and Scudder, JJ. (dissenting). We respectfully disagree with the majority's conclusion that County Court erred in refusing to suppress physical evidence seized from defendant's vehicle and statements that defendant made to the police, and we thus also disagree with the majority's further conclusion that the plea must be vacated and the indictment dismissed. We therefore dissent.

Defendant's vehicle was stopped by a State Trooper for speeding while traveling north on Interstate 81. The Trooper testified at the suppression hearing that, as he approached the vehicle, he observed that the rear of the vehicle was "sagging excessively" as if there were a "heavy object" in the trunk. In response to the Trooper's question, defendant stated that he and his two passengers had visited family in Ohio for a couple of days and that they were en route to their home. The Trooper observed several large nylon bags with sharp edges protruding from the inner wall of the bags. The bags filled the backseat behind the driver's seat, as well as the floor of the backseat, leaving just enough space for the petite passenger to sit in the rear passenger seat. The Trooper asked defendant whether "this was [defendant's] luggage in the bags," and defendant responded that it was his clothing. Because he could observe sharp edges protruding through the bags, the Trooper asked defendant whether his clothing was in boxes because it looked like there were boxes inside the bags, and defendant answered "yes," the clothing was in boxes. Defendant then stated that it was not clothing in the bags, but presents that he bought in Ohio for children and other family members. He explained that there were toys for children in the bags. When asked what kind of toys, defendant replied, "riding toys," which he clarified as "bicycles." The Trooper testified that, based upon the nervous demeanor of defendant and the passengers, the responses to the questions that did not comport with the Trooper's observations of the bags, and his experience related to the transportation of illegal contraband, he was suspicious that there was criminal activity afoot—specifically, that defendant was transporting something illegal "north."

Defendant advised the Trooper that he was a retired federal law enforcement officer and he requested that he be "on his way." The Trooper asked defendant whether he would unzip a bag, and defendant declined, stating that he did not want to

have the vehicle searched. The Trooper advised defendant that it was his right to refuse to have the vehicle searched, but stated that he believed there was a crime being committed and therefore asked him to step out of the vehicle, at which point the Trooper observed that defendant's pockets were bulging. The Trooper reminded defendant that his responses with respect to the contents of the bags had changed from clothing to bicycles, and defendant reiterated that there were bicycles inside the bags. The Trooper spoke to the passengers in the vehicle, both of whom denied that any of the bags belonged to them, and they denied knowing what was in the bags or in the trunk. The Trooper advised defendant that both passengers denied having luggage in the vehicle after a trip to Ohio, at which point defendant lowered his head and asked if he could just be truthful. Defendant then stated that he had cigarettes in the vehicle. The Trooper asked whether the cigarettes were taxed or untaxed, and defendant stated that they were untaxed, that there were approximately 300 cartons in the vehicle, and that he sold them to family and friends.

We agree with the majority's conclusion that defendant was not in custody during his temporary roadside detention and thus that it was permissible for the trooper to engage in a "reasonable initial interrogation attendant to a roadside detention that was merely investigatory" (*People v Brown*, 107 AD3d 1305, 1306 [2013], *lv dismissed* 23 NY3d 1018 [2014]).

We disagree with the majority's conclusion that the Trooper lacked a founded suspicion of criminal activity. We would therefore affirm the judgment based upon, inter alia, the court's implicit determination that a level two *De Bour* inquiry was justified (*see generally People v De Bour*, 40 NY2d 210, 223 [1976]). As an initial matter, we note that, in response to the level one inquiry regarding defendant's destination, and after defendant advised him that he was en route to his home from Ohio (*see People v McCarley*, 55 AD3d 1396, 1396 [2008], *lv denied* 11 NY3d 899 [2008]), the Trooper followed up with what we conclude was an additional appropriate level one question, i.e., whether defendant's luggage was in the bags, which were numerous, were in plain view, and looked unusual based upon the sharp edges protruding through the nylon fabric (*see People v Hollman*, 79 NY2d 181, 191 [1992]; *see also People v Moore*, 47 NY2d 911, 912 [1979], *revg for reasons stated in dissenting opn* 62 AD2d 155, 157-160 [1978]). Defendant responded with an answer that did not correspond to the Trooper's observation, i.e., that the bags contained clothing. The Trooper properly made a further level one inquiry whether the clothing was in

boxes based upon the "unusual" observation of multiple nylon bags containing what appeared to be boxes (*Hollman*, 79 NY2d at 191). At that point, defendant responded affirmatively, but then changed his answer, stating that the bags contained gifts including toys. At that point, the Trooper asked what kind of toys, and defendant ultimately responded that the bags contained bicycles.

We conclude that, based upon defendant's apparently untruthful responses to level one inquiries, the Trooper's observation of the sagging trunk and the number of bags in the backseat, the nervous demeanor of defendant and the passengers, and the Trooper's experience that illegal contraband was transported on that route, the Trooper had a founded suspicion that there was criminal activity afoot (*see Hollman*, 79 NY2d at 193; *People v Sykes*, 122 AD3d 1306, 1307 [2014], *lv denied* 26 NY3d 972 [2015]; *McCarley*, 55 AD3d at 1396-1397; *cf. People v Garcia*, 20 NY3d 317, 321 [2012]; *People v Hightower*, 136 AD3d 1396, 1396-1397 [2016]; *see generally People v Devone*, 15 NY3d 106, 114-115 [2010]). He was therefore justified in asking more invasive questions "focusing on the 'possible criminality' " of defendant, as well as in asking defendant to unzip a bag (*People v Tejeda*, 217 AD2d 932, 933 [1995], *lv denied* 87 NY2d 908 [1995], quoting *Hollman*, 79 NY2d at 191; *see McCarley*, 55 AD3d at 1396-1397). Present—Carni, J.P., Curran, Troutman, Winslow and Scudder, JJ.