People v Ginty (2022 NY Slip Op 02899)

People v Ginty

2022 NY Slip Op 02899

Decided on April 29, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 29, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CENTRA, AND PERADOTTO, JJ.

112 KA 19-02139

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ISAIAH GINTY, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JESSICA N. CARBONE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Matthew J. Doran, J.), rendered October 18, 2019. The judgment convicted defendant, upon a plea of guilty, of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a weapon in the third degree (§ 265.02 [8]). In appeal No. 2, defendant appeals from a judgment revoking the sentence of probation previously imposed upon his conviction of criminal possession of a controlled substance in the third degree (§ 220.16 [1]) and imposing a determinate term of imprisonment, followed by a period of postrelease supervision. We affirm in each appeal.
Defendant first contends, and the dissent agrees, that County Court erred in refusing to suppress evidence obtained by the police as a result of an interaction and pat frisk conducted during a traffic stop. We reject that contention.
The evidence at the suppression hearing established that the police lawfully stopped the vehicle in which defendant was a passenger (see People v Robinson, 97 NY2d 341, 348-349 [2001]). Although defendant, along with the other occupants, was initially cooperative and compliant with the officers' instructions to keep his hands visible, one of the officers observed that defendant thereafter began to exhibit furtive behavior in the vehicle inasmuch as his hands became "fidgety and shaky," he started "looking all around" while the other occupants remained calm, and he then "gently leaned forward and b[lad]ed his body away from [the officer]" and "reached underneath toward his waistband" (see People v Carter, 109 AD3d 1188, 1189 [4th Dept 2013], lv denied 22 NY3d 1087 [2014]; People v Fagan, 98 AD3d 1270, 1271 [4th Dept 2012], lv denied 20 NY3d 1061 [2013], cert denied 571 US 907 [2013]). The officer further explained that defendant appeared to be "reaching for something" in a slow manner designed to avoid "attract[ing the officer's] attention," which raised safety concerns that defendant may have had a weapon (see People v Benjamin, 51 NY2d 267, 271 [1980]). Although the dissent suggests otherwise, the fact that the officer's view of defendant was obscured to some extent when defendant was partially concealed inside the vehicle and was observed surreptitiously reaching toward his waistband constitutes a "circumstance that supports a reasonable suspicion that [defendant was] armed or pose[d] a threat to [officer] safety" (People v Batista, 88 NY2d 650, 654 [1996]; see Fagan, 98 AD3d at 1271; see generally People v Garcia, 20 NY3d 317, 323 [2012]). Indeed, based on his movements inside the vehicle, the officers "reasonably suspected that defendant was armed and posed a threat to their safety because his actions were directed to [*2]the area of his waistband, which was concealed from their view" (Fagan, 98 AD3d at 1271; see People v Roberson, 155 AD3d 1683, 1683-1684 [4th Dept 2017], lv denied 31 NY3d 1086 [2018]; Carter, 109 AD3d at 1189). Thus, contrary to the dissent's suggestion, we conclude that "[e]ven though some of the circumstances, when viewed in isolation, might be considered innocuous, the totality of the information available to the police justified the frisk of defendant" (People v Feldman, 114 AD3d 603, 603 [1st Dept 2014], lv denied 23 NY3d 962 [2014]; see Benjamin, 51 NY2d at 271).
In view of our determination to affirm the judgment in appeal No. 1, we reject defendant's contention that the judgment in appeal No. 2 must be reversed on the ground that he admitted his violation of probation in appeal No. 2 based on the promise that the sentence in appeal No. 2 would run concurrently with the sentence in appeal No. 1 (see People v Collins, 167 AD3d 1493, 1498-1499 [4th Dept 2018], lv denied 32 NY3d 1202 [2019]; People v Khammonivang, 68 AD3d 1727, 1727-1728 [4th Dept 2009], lv denied 14 NY3d 889 [2010]; cf. People v Fuggazzatto, 62 NY2d 862, 863 [1984]).
All concur except Whalen, P.J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent. Defendant does not dispute that the vehicle in which he was a passenger was lawfully stopped (see People v Robinson, 97 NY2d 341, 348-349 [2001]). Nor does he dispute that, "upon making a valid stop of a motor vehicle for a traffic violation, the police may order the driver and all passengers out of the vehicle until the stop is concluded" (People v Forbes, 283 AD2d 92, 94 [2d Dept 2001], lv denied 97 NY2d 681 [2001]). He contends that, based on the suppression hearing testimony, the People failed to meet their burden of showing that the officer had a reasonable suspicion "that defendant was armed and posed a threat to [his] safety" to justify a pat frisk of defendant's person (People v Carter, 109 AD3d 1188, 1189 [4th Dept 2013], lv denied 22 NY3d 1087 [2014] [internal quotation marks omitted]).
The evidence at the hearing showed that defendant was initially "fully cooperative" with the officers who stopped the vehicle, answering their questions and complying with their instructions "to keep [his] hands where [the officers could] see them." However, at some point during the stop, defendant became restless, "looking all around" with "fidgety and shaky" hands. Although one of the officers testified that he observed defendant make one reaching movement "underneath toward his waistband," the officer's view of the movement was severely impeded inasmuch as, according to his testimony, he was outside the car, on the opposite side from defendant, observing defendant through a window. The officer did not observe a telltale bulge in defendant's clothing (cf. People v Jackson, 52 AD3d 400, 400 [1st Dept 2008], lv denied 11 NY3d 833 [2008]; People v Price, 49 AD3d 330, 330 [1st Dept 2008], lv denied 10 NY3d 938 [2008]), nor did he actually see defendant's hand reach into his clothing (cf. Carter, 109 AD3d at 1189; People v Daniels, 103 AD3d 1204, 1205 [4th Dept 2013], lv denied 22 NY3d 1137 [2014]). Instead, he testified only that defendant's left hand remained in view while his right hand was out of view reaching "in the general waistline side of his body area."
"Reasonable suspicion 'may not rest on equivocal or "innocuous behavior" that is susceptible of an innocent as well as a culpable interpretation' " (People v Hinshaw, 35 NY3d 427, 438 [2020], quoting People v Brannon, 16 NY3d 596, 602 [2011]). Inasmuch as defendant's nervousness and movements were susceptible of an innocent interpretation, particularly in light of his status as the vehicle's only black occupant, and inasmuch as defendant was, according to the officer's testimony, "fully compliant" with the officers' instruction to exit the vehicle, I agree with defendant that his conduct while in the vehicle was insufficient to establish reasonable suspicion necessary for law enforcement to conduct a pat frisk of his person (cf. People v Fagan, 98 AD3d 1270, 1271 [4th Dept 2012], lv denied 20 NY3d 1061 [2013], cert denied 571 US 907 [2013]; see generally People v Garcia, 20 NY3d 317, 322-323 [2012]; People v De Bour, 40 NY2d 210, 223 [1976]).
I therefore agree with defendant that County Court erred in refusing to suppress the weapon seized from his person (see generally Brannon, 16 NY3d at 602-603). Thus, in appeal No. 1, I would reverse the judgment, vacate the plea, and grant that part of the omnibus motion seeking suppression of the weapon. Further, because my determination would result in the suppression of all evidence in support of the crimes charged, I would also dismiss the indictment in appeal No. 1 (see People v Williams, 177 AD3d 1312, 1313 [4th Dept 2019]). Additionally, [*3]inasmuch as defendant admitted to a probation violation based on the promise that the sentence in appeal No. 2 would run concurrently with the sentence in appeal No. 1 (see generally People v Fuggazzatto, 62 NY2d 862, 863 [1984]), I would reverse the judgment in appeal No. 2, vacate the admission, and remit for further
proceedings on the violation.
Entered: April 29, 2022
Ann Dillon Flynn
Clerk of the Court