People v Hodge (2022 NY Slip Op 03821)

People v Hodge

2022 NY Slip Op 03821

Decided on June 10, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 10, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, NEMOYER, AND CURRAN, JJ.

261 KA 20-01435

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MONTRA HODGE, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KAITLYN M. GUPTILL OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered October 15, 2020. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and assault in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the plea is vacated, those parts of the omnibus motion seeking to suppress physical evidence and statements are granted, the indictment is dismissed, and the matter is remitted to Onondaga County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him, upon his plea of guilty, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and assault in the second degree (§ 120.05 [3]), defendant contends that County Court erred in refusing to suppress, as the product of an unlawful search and seizure following a traffic stop, a loaded firearm found on his person and his statements to the police. We agree with defendant.
Preliminarily, however, we reject defendant's contention that the police officers who conducted the traffic stop of a truck in which defendant was the passenger inordinately prolonged the detention. "A traffic stop constitutes a limited seizure of the person of each occupant" (People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]). "For a traffic stop to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (id.).
Here, we conclude that the police "did not inordinately prolong the detention beyond what was reasonable under the circumstances" (People v Edwards, 14 NY3d 741, 742 [2010], rearg denied 14 NY3d 794 [2010]; see People v Huddleston, 160 AD3d 1359, 1361 [4th Dept 2018], lv denied 31 NY3d 1149 [2018]; cf. Banks, 85 NY2d at 562-563). The record establishes that, upon observing a violation of the Vehicle and Traffic Law, an officer initiated a lawful traffic stop of the truck that was occupied by an unlicensed driver and defendant, who were hauling a load for an employer in an attached trailer. The officer then properly directed the driver to exit the vehicle (see People v Garcia, 20 NY3d 317, 321 [2012]; People v Robinson, 74 NY2d 773, 775 [1989], cert denied 493 US 966 [1989]). The officer spent the first half of the temporary detention—approximately 25 minutes—promptly investigating the identity of the driver, which included searching a Department of Motor Vehicles database, questioning the driver about his real name, calling the employer to verify the identities of the occupants, and ultimately discovering that the driver had repeatedly provided a false name and date of birth, which resulted in his arrest and the subsequent discovery of a controlled substance on his person for which he did not have a prescription.
Thereafter, the officer and backup officers who had arrived at the scene appropriately continued the temporary detention by asking defendant whether he had identification such as a license. Indeed, "[w]here, as here, a police officer makes a legitimate traffic stop, a request for identification of a passenger constitutes a minimal intrusion that is reasonable where the driver is unable to provide identification or a valid driver's license" (People v Jones, 8 AD3d 897, 898 [3d Dept 2004], lv denied 3 NY3d 708 [2004]). Inasmuch as defendant did not produce a license, and the driver had been arrested, there was no licensed driver available to remove the vehicle from the interstate highway (see generally Huddleston, 160 AD3d at 1360), and the officer therefore called the employer, who indicated that he would arrive shortly to retrieve the vehicle. While waiting for the employer, the officer returned to his patrol vehicle and diligently completed paperwork on his computer, which included various tickets and accusatory instruments, an incident report, and database searches (see People v Rainey, 49 AD3d 1337, 1339 [4th Dept 2008], lv denied 10 NY3d 963 [2008]; cf. Banks, 85 NY2d at 561-563). Moreover, although the police then engaged in a discussion of how to proceed with the traffic stop that lasted several minutes, it was not unreasonable for the police to thereafter return to request that defendant exit the truck (see Edwards, 14 NY3d at 742; see generally Garcia, 20 NY3d at 321). Although the traffic stop lasted over 45 minutes, we conclude that, "based on the evolution of the stop, . . . [the] detention [was] reasonably related in scope and length to the escalating series of events so as to justify such detention" (People v Blanche, 183 AD3d 1196, 1199 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]; see also Edwards, 14 NY3d at 742).
We nonetheless agree with defendant that the officers, after directing that defendant exit the truck, improperly attempted to perform a pat frisk of defendant's person that was not supported by the requisite level of suspicion. In evaluating police conduct, a court "must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]; see People v De Bour, 40 NY2d 210, 215, 222-223 [1976]; People v Savage, 137 AD3d 1637, 1638 [4th Dept 2016]). Here, the police were entitled to direct defendant to exit the truck "as a precautionary measure and without particularized suspicion" (Garcia, 20 NY3d at 321; see Robinson, 74 NY2d at 775; People v Ross, 185 AD3d 1537, 1538 [4th Dept 2020], lv denied 35 NY3d 1115 [2020]; People v Ford, 145 AD3d 1454, 1455 [4th Dept 2016], lv denied 29 NY3d 997 [2017]). However, "the propriety of a [subsequent] frisk is not automatic"; rather, in the absence of probable cause for believing that the defendant is guilty of a crime, the police "must have knowledge of some fact or circumstance that supports a reasonable suspicion that the [defendant] is armed or poses a threat to safety" (People v Batista, 88 NY2d 650, 654 [1996]; see People v Shuler, 98 AD3d 695, 696 [2d Dept 2012]; People v Everett, 82 AD3d 1666, 1666 [4th Dept 2011]).
Here, the police proceeded to an attempted frisk by approaching the passenger side of the truck, opening the door, and directing defendant to exit the truck so that, as they informed defendant, they could perform a frisk of his person (see People v William II, 98 NY2d 93, 97 [2002]). The attempted frisk was unlawful, however, because the record establishes that the police did not have " 'knowledge of some fact or circumstance that support[ed] a reasonable suspicion that . . . [defendant was] armed or pose[d] a threat to [their] safety' " (Everett, 82 AD3d at 1666, quoting Batista, 88 NY2d at 654; see Ford, 145 AD3d at 1455-1456). Furthermore, even though defendant, despite being instructed to leave his coat in the truck, grabbed the coat, threw it onto one of the officers, and fled in the grassy area by the side of the interstate highway, instead of submitting to the frisk of his person, the police lacked probable cause to arrest defendant for obstructing governmental administration in the second degree based on his alleged obstruction of the officers' attempted frisk, because that police conduct was not authorized (see People v Lupinacci, 191 AD2d 589, 590 [2d Dept 1993]; see also People v Sumter, 151 AD3d 556, 557 [1st Dept 2017]; People v Perez, 47 AD3d 1192, 1193-1194 [4th Dept 2008]). Moreover, while the officers had also indicated to defendant that they were going to perform a search of the truck, the People did not rely below on the theory that defendant was properly arrested for obstructing a lawful search of the truck, nor, as the dissent states, did the court "explicitly base[] its decision on that theory." We thus conclude that, as "an appellate court[, we] may not uphold a police action on a theory not argued before the suppression court" (People v Lloyd, 167 AD2d 856, 856 [4th Dept 1990]; see People v Johnson, 64 NY2d 617, 619 n 2 [1984]; People v Dodt, 61 NY2d 408, 416 [1984]). Contrary to the court's determination and the People's contention, the officers had no other valid basis upon which to arrest defendant. We therefore conclude that the court should have suppressed the loaded firearm seized from [*2]defendant's person upon his arrest and his subsequent statements to the police.
Based on the foregoing, defendant's plea must be vacated and, because our determination results in the suppression of all evidence in support of the charged crime of criminal possession of a weapon in the second degree (see People v Suttles, 171 AD3d 1454, 1455 [4th Dept 2019]; People v Mobley, 120 AD3d 916, 919 [4th Dept 2014]) and because the officers were not engaged at the time of the alleged assault in the performance of "a lawful duty" necessary to support the charged crime of assault in the second degree (Penal Law § 120.05 [3]; see People v Voliton, 190 AD2d 764, 766-767 [2d Dept 1993], affd 83 NY2d 192 [1994]), the indictment must be dismissed. We therefore reverse the judgment, vacate the plea, grant those parts of defendant's omnibus motion seeking suppression of physical evidence and statements, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.
All concur except Nemoyer and Curran, JJ., who dissent and vote to affirm in the following memorandum: We dissent. The officers were entitled to pursue and arrest defendant because he committed the offense of obstructing governmental administration by interfering with the officers' lawful search of the vehicle. We agree with the majority that the police did not inordinately prolong the traffic stop, that they properly requested defendant's identification, and that they properly asked defendant to exit the vehicle. However, rather than walk away from what was an otherwise lawful search of the vehicle, defendant threw his coat at one of the officers and attempted to flee the scene. By that disruptive conduct of throwing his coat, defendant "attempt[ed] to prevent a public servant from performing an official function," namely, the lawful vehicle search (Penal Law § 195.05), and provided the officers with probable cause to arrest him for obstructing governmental administration in the second degree (see People v Graham, 54 AD3d 1056, 1058 [2d Dept 2008]). The officers obtained such probable cause before they conducted the search of defendant's person, which revealed the loaded firearm and before they obtained statements from defendant, and thus County Court properly refused to suppress the firearm and statements (see generally People v Cooper, 85 AD3d 1594, 1595 [4th Dept 2011], affd 19 NY3d 501 [2012]; People v Malone, 289 AD2d 1011, 1011 [4th Dept 2001], lv denied 97 NY2d 757 [2002]). We would therefore affirm.
Although the majority concludes that we cannot reach the issue of probable cause arising from obstructing a lawful search of the vehicle, the record reflects that this issue was raised at the suppression hearing, and indeed it formed the basis of the court's suppression decision. Thus, relying on a theory of obstructing governmental administration as to the vehicle search would not require this Court to rely "on a factual theory not argued by the People below" (People v Johnson, 64 NY2d 617, 619 n 2 [1984]; cf. People v Lloyd, 167 AD2d 856, 856-857 [4th Dept 1990]), and the suppression court explicitly based its decision on that theory (cf. People v Dodt, 61 NY2d 408, 416 [1984]).
We take no position on whether the police could have lawfully searched defendant's person before defendant threw the coat, nor need we consider that question, because it does not alter the suppression calculus. Regardless of whether a possible search of defendant would have been lawful had defendant not interfered with the search of the vehicle by throwing his coat at an officer, the throwing of the coat provided the officer with probable cause to arrest, prior to the search, which in turn authorized a search incident to arrest (see generally People v Lewis, 89 AD3d 1485, 1485 [4th Dept 2011]). The fact that defendant might have also attempted to prevent a distinct unlawful act by the police in no way negates the fact that he, by the same conduct, attempted to prevent a lawful function.
Entered: June 10, 2022
Ann Dillon Flynn
Clerk of the Court